IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | |
| LOXLY JOHNSON, a/k/a Desmond Williams, | Criminal No.:  MJM-10-0799 |
| Defendant. | |

## MEMORANDUM

In December 2011, a jury found Loxly Johnson guilty of one count of Conspiracy to Import One Kilogram or More of Heroin and 500 Grams or More of Cocaine in violation of 21 U.S.C. § 960(a)(1) and (b)(1)(2) and 21 U.S.C. § 963. ECF No. 98. Judge Quarles, who presided over Johnson's trial and sentencing, sentenced Johnson to 240 months of incarceration followed by ten years of supervised release. ECF No. 152 (Judgment).[1]

Johnson remains incarcerated and has filed both a Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) and a Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(2). *See* ECF Nos. 204, 207, 209, 221. Both motions are fully briefed, and the Court finds that a hearing is unnecessary. *See* Loc. Rule 105.6 (D. Md. 2025). For the reasons stated herein, the Court shall grant the motion for compassionate release in part with a reduction in sentence to time served as of December 18, 2025, and the motion for sentence reduction shall be denied.[2]

---

[1] The case was reassigned to other judges in the years to follow. It was reassigned the undersigned on January 15, 2025.

[2] There are also several motions to seal various filings made in connection with the foregoing motions. ECF Nos. 208, 215, 217, 222. These sealing motions shall be granted. Sealing the materials is a necessary measure to protect Johnson's private medical records for public view, which the Court finds to be a compelling interest that overrides the public's right of access. Considering the high volume of these materials, the Court finds redaction to be impracticable.

The government also filed a consent motion for extension of time to respond to Johnson's Motion for Compassionate release, ECF No. 213, which shall be granted *nunc pro tunc*.

I.  **BACKGROUND**

   A. **Factual Background**

On December 17, 2010, federal law enforcement authorities received information that crew members of an international cruise ship may have been involved in smuggling narcotics on the ship. The next day, Homeland Security Investigation and Customs and Border Protection inspected crew members upon their arrival to Baltimore, Maryland. During a search of crew member Gavin Excell's person, agents found multiple packages containing a total of about 695 grams of heroin and about 254 grams of cocaine. Following his arrest, "Excell stated that he had picked up the drugs in Jamaica or the Dominican Republic with fellow crew members John Swart Garth (Garth) and an individual he knew as Kishurn, later identified as Kishurn Neptune (Neptune), and he was to deliver them to someone called 'Tony' at a nearby Wal-Mart." *United States v. Graves*, 545 F. App'x 230, 233 (4th Cir. 2013).

While Excell was in custody, his phone received a call from a phone number linked to Johnson's daughter. An agent went to the Wal-Mart parking lot and observed occupants of a GMC Envoy vehicle registered to Johnson's daughter, who were later identified as Johnson and Shenika Graves, interacting with Garth and Neptune. At one point, Garth entered the vehicle while Johnson and Graves were inside. Some of these individuals were observed conducting counter surveillance, and Neptune was observed looking directly at one of the agents present.

Excell made controlled phone calls to "Tony," and it was later learned through a traffic stop and seizure of Johnson's cell phone and other evidence that "Tony" and Johnson were the same person. During a call between Excell and "Tony"/Johnson, Excell stated that immigration authorities had checked his passport upon arrival and that delay prevented him from making the delivery on time, but he could be at Wal-Mart in 15 minutes. Johnson stated that he was at Wal-

Mart but would not accept the delivery there because the location was "hot." ECF No. 1 (Complaint). After Johnson left the Wal-Mart in the Envoy vehicle registered to his daughter, law enforcement continued surveillance of him and observed him using his cell phone at the same time Excell received a call. Law enforcement conducted a traffic stop and eventually searched the vehicle, finding $8,000 in cash in the lining of a child safety seat. Johnson was arrested. A query of the National Crime Information Center revealed that he had been convicted previously of felony possession and importation of cocaine in Maryland state court and was sentenced to a five-year term of incarceration.

Law enforcement approached Graves in the Wal-Mart after Johnson left the location and asked to speak with her, and she agreed. During an interview in one officer's patrol car, "Graves indicated that she had come to Baltimore from Virginia that morning with Johnson, a drug trafficker, to meet someone from a cruise ship." *Graves*, 545 F. App'x at 235. She further stated that she and Johnson had come to pick up narcotics. ECF No. 1. "Graves said that an unknown man had entered the Envoy earlier that day and had given them three packages in return for $4,000 and that the 'stuff' was in her purse." *Graves*, 545 F. App'x at 235. Agents searched Graves's purse and found three packages containing about 642 grams of heroin and about 350 grams of cocaine. Graves advised that these packages were the drugs she and Johnson received from the unknown man in the vehicle, which was understood to be Garth.

While in custody, Graves received multiple phone calls, two of which she was asked answered under observation by law enforcement. "The first call was from a person in Virginia, stating that he was worried 'about Johnson's status.' The second call was from a person apparently using an overseas phone, asking Graves if she had 'the stuff.' She told the caller she had it, but was stuck at the Wal–Mart." *Id.*

**B. Procedural History**

In December 2010, a grand jury indicted Johnson along with Graves, Excell, Garth, and Neptune, charging conspiracy.[3] ECF No. 25. Johnson entered a plea of not guilty, ECF No. 34, and proceeded to a jury trial on the superseding indictment for one count of Conspiracy to Import One Kilogram or More of Heroin and 500 Grams or More of Cocaine in violation of 21 U.S.C. §§ 960(a)(1), (b)(1) and 963. ECF No. 25. A jury found Johnson guilty after a three-day trial in December 2011. ECF Nos. 33, 34, 76, 79, 80, 98.

The Court determined at sentencing that Johnson had a total offense level of 32 and criminal history category II, which, the Court noted, would have resulted in an advisory sentencing guidelines range of 135 to 168 months. ECF No. 152 at 5, 6. However, based on Johnson's prior conviction[4] for a serious drug felony, the government sought an enhanced sentence under 21 U.S.C. § 851. ECF No. 75. Judge Quarles applied the enhancement and sentenced Johnson to a mandatory minimum of 240 months in prison, with ten years of supervised release. ECF No. 132 (Judgment). Judge Quarles deemed this sentence to be "sufficient but not greater than necessary to reflect the seriousness of the offense, provide just punishment and adequate deterrence to criminal conduct, and to protect the public from further crimes of the Defendant." ECF No. 152 at 6–7. Johnson timely appealed his conviction, ECF No. 138, and the U.S. Court of Appeals for the Fourth Circuit affirmed, ECF No. 155; *United States v. Graves*, 545 F. App'x 230, 243 (4th Cir. 2013) (per curiam).

---

[3] Only Johnson and co-defendant Shenika Graves proceeded to trial; the other three defendants entered guilty pleas. *See* ECF Nos. 52, 53, 56, 57, 71, 72.

[4] The government relied upon Johnson's prior conviction for the importation of a controlled substance, in violation of Maryland's Criminal Code, on or about January 25, 1999, for which he was sentenced to five years of incarceration. ECF No. 75 at 1.

Johnson then filed a series of *pro se* post-conviction motions. In July 2015, he filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255. ECF No. 157. The case was reassigned to Judge Motz, who denied the motion. ECF No. 160. Johnson then timely filed a Federal Rule of Civil Procedure 59(e) motion to alter or amend the Court's denial of his motion to vacate, a motion for summary judgment, and a motion for sanctions against the government. ECF Nos. 161, 162, 164. Judge Motz denied all three motions in August 2016. ECF Nos. 165, 166, 167.

Johnson appealed the denial of his § 2255 and Rule 59(e) motions. ECF No. 168. The Fourth Circuit dismissed the appeal and remanded for full consideration of unaddressed claims Johnson raised in his § 2255 motion. ECF Nos. 173, 174; *United States v. Johnson*, 687 F. App'x 267, 268 (4th Cir. 2017) (per curiam). Following full briefing of the outstanding issues, Judge Blake, replacing Judge Motz as presiding judge, denied and dismissed all outstanding claims. ECF Nos. 183, 184. Johnson sought a certificate of appealability, ECF No. 185, which was denied and dismissed, ECF Nos. 188, 189; *United States v. Johnson*, 738 F. App'x 214, 215 (4th Cir. 2018) (per curiam). Johnson subsequently filed a Federal Rule of Civil Procedure 60(b) motion for relief from the final judgment or order of this Court's denial of his § 2255 motion, ECF No. 190, which was denied, ECF No. 202.[5]

In September 2021, Johnson, acting *pro se*, filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act of 2018. ECF No. 204. Upon appointment of counsel, ECF Nos. 205, 206, Johnson supplemented his motion for compassionate release in March 2022. ECF Nos. 207, 208, 209. This supplemental motion is supported by four exhibits. ECF No. 209-1 through 209-4.[6] The government filed a response in

---

[5] Johnson also sought to appeal the reassignment of his case to a different presiding judge, which was dismissed. ECF No. 198; *United States v. Johnson*, 790 F. App'x 557, 557 (4th Cir. 2020) (per curiam).

[6] I will refer to ECF Nos. 204, 207, 208, and 209 collectively as Johnson's "Motion for

opposition to the Motion for Compassionate Release. ECF No. 216, supported by six exhibits, ECF No. 216-1 through ECF No. 216-6. Johnson filed a reply, reasserting the two bases for compassionate release previously argued—a sentencing disparity and Johnson's health conditions. ECF No. 218. He later filed a supplemental reply. ECF No. 229.

This case was reassigned to the undersigned in January 2025.

In February 2025, Johnson, again *pro se*, filed a separate Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(2), citing Amendment 782 to the United States Sentencing Guidelines. ECF No. 221.[7] The government filed a response in opposition to the Motion for Sentence Reduction, supported by one exhibit. ECF Nos. 228, 228-1.

Johnson is presently incarcerated in a low-security Federal Correctional Institution in Oakdale, Louisiana ("FCI-Oakdale II") and has a projected release date of January 2, 2027. *See Bureau of Prisons Inmate Locator*, https://perma.cc/RS3L-UVMR. He has served approximately 179 months—roughly 75%—of his 240-month prison sentence. ECF No. 132 at 2.

## II.   MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)

### A.  Legal Standard

Usually, a court may not "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024). There are, however, "a few narrow exceptions" to this "rule of finality." *Freeman v. United States*, 564 U.S. 522, 526 (2011).

A provision of the Sentencing Reform Act of 1984, "commonly known as the

---

Compassionate Release."

[7] I will refer to ECF No. 221 as Johnson's "Motion for Sentence Reduction." The Office of the Federal Public Defender declined to supplement this motion. *See* ECF No. 222.

6

'compassionate-release exception,'" is one such exception. 18 U.S.C. § 3582(c)(1)(A)(i); *see also Moody*, 115 F.4th at 310. Under the compassionate release exception, a court may reduce a sentence if "extraordinary and compelling reasons warrant such a reduction" or "the defendant is at least 70 years of age, has served at least 30 years in prison . . . ," and "a determination has been made . . . that the defendant is not a danger to the safety or any other person or the community." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022). A sentence modification must be "consistent with applicable policy statements issued by the Sentencing Commission" and warranted under the § 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Crawley*, 140 F.4th 165, 169 (4th Cir. 2025). For a court to consider a compassionate release motion filed by a defendant,[8] the defendant must first "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or show that more than thirty days have passed "from the receipt of such a request by the warden of the defendant's facility[.]" 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022).

Before 2023, no relevant policy statement governed compassionate release motions filed by prisoners themselves. *See United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020), *superseded as recognized by United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024). In 2023, the United States Sentencing Commission amended the policy statement at U.S.S.G § 1B1.13 to apply to motions filed by defendants, clarifying the "contours of 'extraordinary and compelling' reasons" for release in such instances. *Davis*, 99 F.4th at 654, 658; *see also* U.S.S.G. § 1B1.13(b).[9]

---

[8] In 2018, Congress "broadened" 18 U.S.C. § 3582(c) relief with the enactment of the First Step Act. Pub. L. No. 115-391, 132 Stat. 5194; 18 U.S.C. § 3582(c)(1)(A), which expanded access to compassionate release by allowing prisoners themselves to file such motions, rather than just the Bureau of Prisons on behalf of inmates. *See United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023).

[9] Section 1B1.13(b) lists six categories of "extraordinary and compelling" circumstances. Section 1B1.13(b)(5) provides a fifth "catch-all" provision for "any other circumstance or combination of

Section 1B1.13(b) lists six categories of "extraordinary and compelling" circumstances. Relevant here, § 1B1.13(b)(6) permits a finding of extraordinary and compelling circumstances where a defendant has served at least ten years of a sentence that is now grossly disparate to a sentence likely to be "imposed at the time the motion is filed," based on an intervening "change in the law . . ." *Id.* § 1B1.13(b)(6). "Then, after considering any appropriate [18 U.S.C.] § 3553(a) factors, the court must determine whether the requested reduction in sentence is consistent with 'applicable policy statements issued by the Sentencing Commission.'" *Davis*, 99 F.4th at 654 (citations omitted). Courts "enjoy the discretion to give additional weight to any one [of the § 3553] factor[s] so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at 656; *see also United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021). And a court does not have "to decide between immediate release or no reduction at all." *United States v. Braxton*, Crim. No. JKB-09-478, 2020 WL 4748536, at *5 (D. Md. Aug. 17, 2020).

### B. Extraordinary and Compelling Reasons

The Court finds that, based on the circumstances of Johnson's case and significant changes to the applicable sentencing framework following the First Step Act, Johnson has presented "extraordinary and compelling reasons" sufficient to warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i).[10] The First Step Act amended § 3582 to permit judicial review of a sentence

---

circumstances that, when described by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." *Id.* § 1B1.13(b)(5); *see also United States v. Brown*, 706 F. Supp. 3d 516, 519–520 (D. Md. 2023). Finally, § 1B1.13(b)(6) deems it extraordinary and compelling when a defendant has served at least ten years of a sentence that is now grossly disparate compared to a non-retroactive change that would be "imposed at the time the motion is filed." *Id.* § 1B1.13(b)(6).

[10] The government concedes that Johnson has exhausted his administrative remedies. ECF No. 216 at 11. Johnson submitted a request for compassionate relief from the Warden of FCI McKean on August 1, 2021, ECF No. 204-1, which counsel later supplemented on February 7, 2022. ECF No. 209-1. The BOP denied Johnson's motion on February 25, 2022. ECF No. 212-1

"'upon motion of the defendant' if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if thirty days have lapsed 'from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]'" *United States v. Legrand*, Crim. No. CCB-10-052, 2024 WL 2941282, at *3 (D. Md. June 11, 2024) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Additionally, the First Step Act "reduced the mandatory minimum penalties triggered by a § 851 notice, applicable to offenders with one or more prior predicate offenses." *Babb v. United States*, Crim. No. ELH-04-0190, 2021 WL 2315459, at *11 (D. Md. June 4, 2021); *see also, e.g.*, 21 U.S.C. § 960(b). Importantly, the enhanced penalty applied at Johnson's sentencing based on his prior drug trafficking conviction was reduced from 20 years of imprisonment to 15 years. *Id.*

Johnson's specific circumstances qualify as extraordinary and compelling under U.S.S.G. § 1B1.13(b)(6).[11] The provision permits consideration of a change in law in deciding whether an extraordinary and compelling reason exists in cases where "a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment," so long as the change in law is not "an amendment to the Guidelines Manual that has not been made retroactive" and it "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's

---

[11] At the time defendant filed his Motion for Compassionate Release, U.S.S.G. § 1B1.13 had not been amended to apply to defendant-filed motions. Thus, the relevant "extraordinary and compelling" inquiry at the time of filing was the *McCoy* framework, under which courts evaluated sentencing disparities on the basis of four factors: (1) a grossly disproportionate sentence as compared to the sentence that would be imposed today, making the preexisting sentence "dramatically longer than necessary or fair," (2) a "grossly lengthy" sentence compared to similar or more serious offenses, (3) amount of sentence already served, and (4) the defendant's characteristics, such as relative youth at sentencing and post-sentencing rehabilitative efforts. *Legrand*, 2024 WL 2941282, at *5 (citation omitted). While no longer the relevant inquiry, Johnson's circumstances would have qualified as "extraordinary and compelling" under the *McCoy* framework as well, given that the five-year disparity in mandatory minimums between sentencing and now is "grossly disproportionate," Johnson has served the majority of the sentence, and his disciplinary record reflects only minor infractions.

9

individualized circumstances." U.S.S.G. § 1B1.13(b)(6). "It is well established in this Circuit . . . that a gross disparity between the sentence a defendant actually received pre-First Step Act and would have received post-First Step Act can be an 'extraordinary and compelling reason[]' for compassionate release." *Legrand*, 2024 WL 2941282, at *4 (quoting *McCoy*, 981 F.3d at 286) (internal quotation marks omitted).

Johnson seeks a sentence modification to time-served because the reduced mandatory minimum reflected in 21 U.S.C. § 960(b), as amended by the First Step Act, would likely result in a sentence today shorter than the one he received in 2012, 21 U.S.C. § 851 enhancements like the one he received are mpe "disfavored," and his guideline sentencing range is now lower than it was when he was sentenced.[12] ECF No. 204 at 4–5; ECF No. 209 at 8–14, 25. He also points to the disparity between his sentence and those of his co-defendants. *Id.* at 12–14.[13] Johnson finally asserts that his health conditions—namely, his older age, severe obesity, and high blood pressure—are also "extraordinary and compelling" reasons for release.[14] ECF No. 204 at 1; ECF No. 209 at 4–5, 15–22.

In opposition to Johnson's compassionate release motion, the government minimizes the disparity between the present mandatory minimum sentence and the mandatory minimum that was applicable at the time Johnson was sentenced, stating that the difference "*only* amount[s] to five

---

[12] Current sentencing guidelines have reduced Johnson's base offense level, lowering his prior guidelines range of 135–168 months to 108–135 months. *Id.* at 2, 11–12.

[13] Of the four co-defendants, Graves is the only one who pleaded not guilty and proceeded to trial. Following her conviction at trial on the charged conspiracy, Graves received a jail sentence of twelve months and one day and three years of supervised release. ECF No. 128. Excell, Garth, and Neptune each pleaded guilty to the charged conspiracy, and each received a sentence of time served plus supervised release, imposed between December 2011 and February 2012. *See* ECF Nos. 108, 110, 122. On December 15, 2011, Garth received a sentence of time served and four years of supervised release. ECF No.110.

[14] Defendant was born in 1962. ECF No. 209-3 at 1. He was 49 years old at the time of sentencing, and he is now 63 years old.

years." ECF No. 216 at 22 (emphasis added). Courts in this Circuit have found lesser disparities to be "significant." *See, e.g.*, *United States v. Shaw*, Crim. No. MFU-13-0025, 2021 WL 3007266, at *5 (W.D. Va. July 15, 2021). Additionally, courts in this Circuit have found "that the sentencing disparity resulting from changes to § 851's penalty structure constitutes an extraordinary and compelling reason to grant relief." *Babb v. United States*, Crim. No. ELH-04-0190, 2021 WL 2315459, at *12 (D. Md. June 4, 2021) (collecting cases). This Court finds the five-year difference between the 20-year mandatory minimum imposed when Johnson was sentenced and the 15-year mandatory minimum that would apply today to be significant enough to justify relief.

Furthermore, Johnson's 20-year sentence is much longer than the sentences typically imposed upon similarly situated offenders in this Court over the last decade. Less than 2% of defendants with criminal history category II sentenced in this District for heroin trafficking over the past decade received a prison sentence of 15 years or greater, and a majority received a sentence of less than ten years. *See* U.S. Sent'g Comm'n, Interactive Data Analyzer, 2015-2024 Sentencing Outcomes, https://perma.cc/7S8L-R4F3. Considering this data, the Court finds Johnson's sentence to be "unusually long" and notes that Johnson has served more than ten years of that sentence for purposes of U.S.S.G. § 1B1.13(b)(6). Given the change in the mandatory minimum prison sentence applicable to Johnson's conduct that has occurred since his sentencing, it is very likely that a prison sentence imposed upon Johnson at the time he filed his motion would be significantly lower than the sentence he is serving.

Moreover, Johnson's request for a time-served sentence—now amounting to nearly 180 months—is supported by the likelihood that he would have completed his sentence by now had he been sentenced after enactment of the First Step Act. Johnson's good time credits have resulted in a projected release date of January 2, 2027, approximately 13 months from today—far less than

11

the five-year disparity between the mandatory minimum applicable at the time of sentencing and that in force today.

In consideration of the foregoing, this Court finds the five-year difference between the mandatory minimum sentence applicable and imposed upon Johnson at the time of his sentencing and the mandatory minimum applicable today resulted in a significant and gross disparity between the prison sentence Johnson is serving and the sentence he would have likely received when his motion was filed.

Additionally, while Johnson's obesity and hypertension do not by themselves constitute an extraordinary and compelling circumstance, the fact that he suffered these health issues while in custody during the height of the COVID-19 pandemic adds further support to finding "extraordinary and compelling" reasons for a sentence reduction. Some courts have determined that the combination of an underlying illness with a sentencing disparity can constitute "extraordinary and compelling" reasons for compassionate release. *See, e.g.*, *United States v. Wright*, Crim. No. ELH-08-381, 2022 WL 2104489, at *13–14 (D. Md. June 10, 2022) (concluding that obesity, hypertension, and prediabetes, particularly when considered with sentencing disparity, "constitute extraordinary and compelling circumstances under the compassionate release statute"); *United States v. Stavrakis*, Crim. No. ELH-19-0160, 2025 WL 2897668, at *28 (D. Md. Oct. 9, 2025) (collecting cases in which district courts "have found extraordinary and compelling circumstances for defendants with chronic medical conditions such as diabetes and hypertension"). Further, judges in this District have found that incarceration during the COVID-19 pandemic "sufficiently increased the severity of the sentence beyond what was originally anticipated such that the purposes of sentencing are met even with . . . [a] proposed reduction." *See, e.g.*, *United States v. Cunningham*, Crim. No. ELH-18-017, 2024 WL 4057004 (D. Md. Sept. 4, 2024);

*Stavrakis*, 2025 WL 2897668, at *30. Although Johnson recovered after contracting COVID-19, he was both hospitalized for three days, ECF No. 209, and spent nine months in the solitary housing unit ("SHU") during the pandemic because he felt his life was in danger and that "SHU was the safest place to be." ECF No. 209-4 at 1.

This Court finds the disparity between Johnson's prison sentence and that likely to be imposed today due to the intervening change in the applicable statutory minimum, combined with Johnson's health condition and the impact of the COVID-19 pandemic on his circumstances in custody, provide an "extraordinary and compelling" reason for a sentence reduction.

### C. 18 U.S.C. § 3355(a) Sentencing Factors

Having found "extraordinary and compelling reasons" for compassionate release, the Court must consider whether the sentencing factors in 18 U.S.C. § 3553(a) warrant relief. *See Bethea*, 54 F.4th at 831. Here, the Court finds that the § 3553(a) factors weigh in favor of a sentence reduction.

The § 3553(a) factors include, among others, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from further crimes of the defendant; (3) "the kinds of sentences available;" (4) the kinds of sentences and sentencing range established under the sentencing guidelines; (5) any pertinent policy statement of the U.S. Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" 18 U.S.C. § 3553(a).

Addressing first "the need to avoid unwarranted sentence disparities[,]" *id.* § 3553(a)(6), the Court has recognized that there has been a change in the law that applied to Johnson at the time of his sentencing and caused a substantial disparity between the prison sentence imposed upon him

13

and the much shorter sentences commonly imposed upon defendants who engage in drug trafficking with comparable criminal history. *See* Part II.B *supra*.

Second, Johnson's offense was quite serious and warranted a lengthy term of imprisonment. Johnson conspired with others to smuggle more than a kilogram of heroin and about 600 grams of cocaine into the United States. As the government describes Johnson, he was "the primary architect and l[i]nchpin" of this international drug-smuggling operation. Although the sentence Johnson received was substantially greater than those of his co-defendants, his longer prison term was justified by his more culpable role in the conspiracy; the disparity was not unwarranted. Heroin and cocaine are both notoriously addictive and dangerous to their abusers. A lengthy sentence of incarceration was necessary to reflect both the seriousness of the societal harms and dangers the conspiracy likely inflicted upon the community, and the critical role Johnson played in the conspiracy. Johnson's prior criminal history—specifically, his previous incarceration for another drug trafficking offense—and his recidivism in his late 40s underscore his high culpability, the high risk of further trafficking in addictive and dangerous drugs that would be presented by his presence in the community, and the great need for the sentence in his case to impart respect for the law and to deter him and others from involvement in drug trafficking. A long prison sentence was justified by the need to deter Johnson specifically, given that the five-year sentence Johnson had previously received failed to deter him from seriously escalating the degree of his involvement in drug trafficking in the instant case. *See United States v. Thomas*, Crim. No. ELH018-0246, 2025 WL 1504831, at * (D. Md. May 27, 2025) (finding failure of prior incarceration to deter defendant "troubling"). Johnson's criminal history was further justification for a longer sentence than that imposed upon his co-defendants.[15]

---

[15] Furthermore, three of Johnson's co-defendants demonstrated acceptance of responsibility for

14

With the foregoing facts in mind, the Court also recognizes that Johnson is now over the age of 62. While age alone is not dispositive generally, courts in the Fourth Circuit have determined that because of evidence of "decreased recidivism as prisoners age," age can favor compassionate release. *Stavrakis*, 2025 WL 2897668, at *28 (citation altered) (citing Bureau of Justice Statistics, United States Department of Justice, Recidivism of Prisoners Released in 30 States in 2005: Patterns from 2005 to 2010 (April 2010), https://perma.cc/ZE9K-QD9U); *United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014) ("[T]he risk of recidivism is inversely related to an inmate's age"). Considering that Johnson was approximately 47 years old when he committed the instant offense, and advanced age would not necessarily preclude re-involvement in drug trafficking conspiracies, the Court finds that Johnson's release even at the age of 62 would present some risk of recidivism. But the risk of recidivism is not as great as it would have been if Johnson were younger and not so great as to forbid his release after serving 180 months of incarceration. The 180 months of imprisonment Johnson is now close to serving greatly exceeds any prior period of incarceration.

Given his current projected release date[16] of January 2, 2027, any reduction of Johnson's sentence at this point will, at most, barely exceed one year, an amount of time unlikely to carry any greater deterrent value than the nearly fifteen years of incarceration Johnson has already served. *See, e.g.*, *United States v. Braxton*, Crim. No. JKB-09-478, 2020 WL 4748536, at *4 (D. Md. Aug 17, 2020) (finding that although defendant's criminal history called for "a substantial penalty . . . to dissuade him from future offenses[,]" "for a person of [63 years of age] and ill health,

---

their crimes by admitting their guilt, which justified reduced sentences for those defendants.

[16] At the time he filed his motion for compassionate release, Johnson had earned 540 days of good time credit and had a projected release date of January 2, 2028. At present, his projected release date is January 2, 2027. ECF No. 209-3 at 8.

15

any sentence of over a decade is bound to have a very substantial deterrent effect, particularly given [defendant's] traumatic experience of contracting COVID-19 during his incarceration" and that "there is little reason to think a sentence of 20 years would deter him more forcefully than a 14-year sentence"); *United States v. Downer*, Crim. No. SAG-11-0050, 2025 WL 2494321, at *2 (D. Md. Aug. 28, 2025) (referring to an early release by eighteen months as a "relatively modest reduction in . . . remaining sentence").

The Court notes the modest evidence of rehabilitation Johnson has submitted for consideration. *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (recognizing that evidence of rehabilitation can provide "the most up-to-date picture" of a defendant's "'history and characteristics[]'") (quoting 18 U.S.C. § 3553(a)(1)). Johnson has been employed while in custody, but several disciplinary infractions stemmed from his failure to report to work. Johnson provides a plausible explanation for the infractions he incurred while incarcerated,[17] but his rehabilitative efforts beyond employment appear to be minimal. I note, however, that Johnson has not been disciplined for any violent or otherwise serious infractions during his long period of incarceration. Furthermore, he has provided evidence of strong familial ties. These familial ties are likely to provide Johnson a stable home and support system during his period of reentry to the community, which will assist Johnson in avoiding further criminal involvement. *See* ECF No. 209-4 at 4 (letters in support of Johnson's release stating that he would live in the family home in New York with his mother, step-father, sister, niece, and cousin, rather than in the state of Virginia where he resided at the time of commission of the crime). Johnson describes himself as having a "deeply changed perspective for . . . life which [he] gained through . . . maturation while being

---

[17] Johnson asserts that several of his sanctions, which were for failure to return to the general population or refusal of a work assignment, were "precipitated by unrest in the prison, Mr. Johnson to feel unsafe in general population and working a job." ECF No. 209 at 23.

16

incarcerated." ECF No. 209-4 at 2.

The balance of the relevant § 3553(a) factors support Johnson's prompt release from custody after having served approximately 180 months of incarceration. The Court finds 180 months in custody to be "sufficient but not greater than necessary" to satisfy the purposes of sentencing listed in § 3553(a)(2), considering Johnson's history and characteristics and the nature and circumstances of his serious crime. This period of imprisonment adequately reflects the severity of the conduct underlying Johnson's conviction and his criminal history while also accounting for his advanced age and his lack of serious or violent disciplinary infractions while in custody, while avoiding the severe sentencing disparity that would result if a sentence reduction were denied. The Court notes, moreover, that the 180 months Johnson will have served by December 18, 2025, equals the mandatory minimum sentence presently in force for his offense of conviction. 21 U.S.C. § 960(b)(1).  *See also Brown*, 78 F.4th at 131, 132 (finding that the disparity between a prior mandatory minimum and a current mandatory minimum as "primarily the result of Congress' conclusion that the prior mandatory minimum is "unfair and unnecessary," reflecting a "legislative rejection" of the prior mandatory minimum "as well as a legislative declaration of what level of punishment is adequate") (internal citation omitted).

Accordingly, the Court will grant Johnson's Motion for Compassionate Release under § 3582(c)(1)(A) in part and reduce his prison sentence to time served as of December 18, 2025. This sentence reduction is consistent with U.S.S.G. § 1B1.13.

### III.     MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(2)

#### A. Legal Standard

As with motions for compassionate release, courts in the Fourth Circuit undertake a two-step inquiry when evaluating motions for sentence reduction under 18 U.S.C. § 3582(c)(2). *See*

*United States v. Peters*, 843 F.3d 572, 574 (4th Cir. 2016) (citing *Dillon v. United States*, 560 U.S. 817, 826 (2010)); *United States v. Williams*, 808 F.3d 253, 257 (4th Cir. 2015). First, § 3582(c)(2) allows a court to reduce a sentence where a defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," if the change to the guidelines has been made retroactive, and so long as the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see also United States v. Barrett*, 133 F.4th 280 (4th Cir. 2025); U.S.S.G. § 1B1.10. Second, as with motions for compassionate release, even where an amendment to the guidelines applies retroactively, the 18 U.S.C. § 3553(a) factors must favor granting relief. U.S.S.G. § 3582(c)(2); *see also United States v. Swain*, 49 F.4th 398, 400 (4th Cir. 2022).

### B. Amendment 782

Johnson argues in his separate Motion for Sentence Reduction that his sentence should be reduced under Amendment 782 to the United States Sentencing Guidelines, which went into effect on November 14, 2014. Amendment 782, U.S. Sent'g Comm'n, https://perma.cc/6HJ3-GGT6. This amendment changed "how the applicable statutory mandatory minimum penalties are incorporated into the Drug Quantity Table [of U.S.S.G. § 2D1.1(c)] while maintaining consistency with such penalties." *Id.* "Specifically, this amendment reduce[d] by two levels the offense levels assigned to the [drug] quantities that trigger the statutory mandatory minimum penalties . . . ." *Id.* Amendment 782 did not alter U.S.S.G. § 5G1.1(c), which allows for the imposition of a sentence "within the applicable guideline range" so long as it "is not less than any statutorily required minimum sentence." U.S.S.G. § 5G1.1(c)(2).

In the instant case, Amendment 782 does not warrant a reduction in Johnson's sentence because his sentence resulted from a statutory mandatory minimum rather than an application of

18

the Sentencing Guidelines. Application Note 1 to U.S.S.G. § 1B1.10 specifically states that "a reduction in the defendant's term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2) and is not consistent with this policy statement if" even an applicable guideline amendment "does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or *statutory provision (e.g., a statutory mandatory minimum term of imprisonment).*" (Emphasis added). While Amendment 782 reduced the "offense levels assigned to the quantities that trigger the statutory mandatory minimum penalties," it did not affect statutory mandatory minimums themselves. U.S.S.G. App. C at p. 66, 68; *see* U.S.S.G. § 5G1.1(c).

Johnson's 240-month prison sentence was the minimum sentence mandated by statute based upon the quantity of drugs involved in his offense of conviction—irrespective of his offense level under the Sentencing Guidelines. *See* U.S.S.G. § 5G1.1(c) (providing that the sentence imposed shall not fall below "any statutorily required minimum sentence"). Therefore, Amendment 782 does not provide grounds to reduce his sentence under 18 U.S.C. § 3582(c)(2).

## IV.  CONCLUSION

By separate Order, which follows, Johnson's Motion for Compassionate Release (ECF Nos. 204, 207) shall be granted in part. An Amended Judgment shall issue, resentencing Johnson to time served as of December 18, 2025, to be followed by ten years of supervised release. The government's consent motion for an extension of time to file a response to the Motion for Compassionate release (ECF No. 213) shall be granted *nunc pro tunc*.

Johnson's separate Motion for Sentence Reduction (ECF No. 221) shall be denied.

The parties' motions (ECF Nos. 208, 215, 217, 227) to seal shall be granted.

__11/26/25__
Date

Matthew J. Maddox
United States District Judge